**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | | |
|---|---|---|---|
| JANICE DUNCAN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. 2:15CV419-WHA | |
| | ) | | |
| STATE OF ALABAMA, et al., | ) | (wo) | |
| | ) | | |
| Defendants. | ) | | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #42), filed by the Defendants on February 3, 2017.

The Plaintiff filed a Complaint in this case on June 12, 2015, bringing claims against the State of Alabama and the Alabama Department of Transportation for retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count I) and against Kathy Brendle and Bill Flowers for race discrimination pursuant to 42 U.S.C. §1983 (Count II).

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes

demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Janice Duncan, is an African-American employee of the Alabama Department of Transportation ("ALDOT"). The Defendants in this case are the State of Alabama, ALDOT, Bill Flowers ("Flowers"), and Kelly Brendle ("Brendle"). Flowers is ALDOT's Chief Financial Officer/Director of Finance and Audits. Brendle is an Accounting Director II and has the title of Deputy Director of Finance & Audits.

Duncan began her employment with the State of Alabama in the Finance Department in 1981. In 1999, she was appointed to a position of Accountant II at ALDOT. In 2008, she was appointed to an Accounting Manager job. For the appraisal period of July 1, 2010 to July 1, 2011, Duncan received a 36.40, "Exceeds Standards." For the appraisal period of July 1, 2011 to July 1, 2012, Duncan received a 35.50, "Exceeds Standards."

On April 3, 2013, Duncan asked Flowers and Brendle to reallocate her position to Accounting Director I. Reallocation is a term used by the State of Alabama when it moves an incumbent employee to a higher job classification outside of the promotional process. Duncan has cited to evidence to show that a reallocation hinges on a desk audit which seeks to confirm that an employee has been performing tasks associated with a different or higher job classification than the employee holds. The Defendants cite to the Affidavit of Steve Dukes, Chief of ALDOT's Personnel Bureau, in which he states that if the State Personnel Department approves the placement of an employee into a new job classification as a result of the reallocation process, the employee receives permanent status at that time, and does not automatically receive a pay increase, but does move into a pay grade which has a higher maximum salary available. (Doc. #41-1 at p.9).

Shortly after Duncan requested the reallocation, Duncan implemented new work rules.

She states that she did this in response to a request from Brendle to address behaviors of employees in the Fiscal Section. Brendle states in an Affidavit that there was an increase in employee complaints to Brendle after Duncan implemented the new work rules. (Doc. #41-14 p.6).

On April 26, 2013, Duncan initiated a written informal counseling against a white female and an African-American male employee, and Brendle asked Duncan to rescind the white female employee's discipline, but did not ask her to rescind discipline given to an African-American employee.

On May 1, 2013, Duncan asked to meet with Brendle and Flowers to let them know that new rules had been implemented. Duncan contends that Flowers and Brendle used the meeting to criticize her management style and gave her a written informal counseling form.

On May 10, 2013, Duncan filed a complaint with ALDOT's internal EEO department regarding the counseling she received on May 1. She identified "racial and insulting verbal comments" in the attachment to the claim form.

On May 14, 2013, Tamiko Jordan ("Jordan"), an African-American employee, filed a race discrimination complaint with ALDOT's internal EEO office, listing Duncan as a possible witness.

Ronda Brooks, an investigator for the Compliance and Business Opportunities Bureau, investigated Duncan's complaint. On June 14, 2013, Duncan was interviewed by Ronda Brooks and provided information on her own and Tamiko Jordan's complaints. Brooks completed the investigation of Duncan's complaint and informed Ellen Leonard, Special Counsel to ALDOT, that she could not find evidence Duncan had been treated unfairly or differently because of her

race. (Doc. #41-6 at p.4).

On June 24, 2013, Duncan received an appraisal rating of 33.60 from Brendle. This score was lower than Duncan's previous appraisal, but still fell within "Exceeds Standards." Brendle states in an Affidavit that she gave Duncan this appraisal because although her accounting work was excellent, she had issues in the areas of communication and supervision. (Doc. #41-14 at p.6).

On June 27, 2013, Kathy Prevo ("Prevo"), an African-American ALDOT employee, was in tears and complained to Brendle that Duncan was putting pressure on Prevo to support Duncan if Duncan were questioned about things happening in the department. (Doc. #41-14 at p.8). The next day, Prevo voiced a complaint regarding an incident with Duncan in which Duncan gave her a print out of an email and then attempted to buy it back from Prevo. (Doc. #41-14 at p.9). Prevo was removed from Duncan's section by Brendle.

Brendle discussed issues regarding Duncan with Flowers, and Flowers went to Lamar S. Woodham, Jr. ("Woodham"), Deputy Director for Administration at ALDOT, to ask for an investigation. Woodham recommended Maxine Wheeler ("Wheeler"), and she was asked to conduct interviews. Wheeler conducted interviews on July 9, 2013 and July 10, 2013. Wheeler states in an affidavit that she interviewed employees Christie Baird, Janice Duncan, Kristina Davis, Mary Johnson, Melodee Major, Shirley Mays, Glenda Motley, Dedrick McDade, Tiffany Patton, Kathy Prevo, Danielle Robert, Beth Rosser, Annette Turner, and Schenese Wade. (Doc. #41-38). Wheeler states in the affidavit that she determined that Duncan's conduct constituted a violation of work rules including failure to perform the job properly, inattention, disruptive conduct, and abusive and threatening language. *Id.* Wheeler prepared a report and submitted it to

Brendle. *Id.* at p. 21.

On August 6, 2013, Brendle and Flowers recommended that Duncan attend supervisor referred Employee Assistance Program ("EAP") counseling. Duncan attended the counseling.

On August 7, 2013, Flowers wrote a memo to Steve Dukes, Bureau Chief—Personnel Bureau, and recommended disciplinary action for Duncan in the form of demotion from the level of Senior Accountant, based on abusive and threatening language, insubordination, and disruptive conduct. Heidi Mense ("Mense"), an investigator for the Compliance and Business Opportunities Bureau, conducted a review of the recommendation and provided a memorandum with her findings. A Disciplinary Review Committee then reviewed the recommendation and at least two of the three members approved the recommendation. (Doc. #41-1 at p.10). On August 23, 2013, after the reviews of his recommendation, Flowers gave Duncan a letter stating that he was recommending her for demotion.

Duncan was then given a hearing date of September 4, 2013. The hearing date was extended to October 18, 2013.

After hearing from witnesses, the Hearing Officer, DeJarvis Leonard ("Leonard"), determined that Duncan's demotion was warranted for the reasons given in Wheeler's report. Leonard stated in an Affidavit that the evidence at the hearing warranted demotion "for the reasons given in the Maxine Wheeler's July 25, 2013 report, which was offered as ALDOT's first exhibit at the hearing, and not for any other reasons." (Doc. #41-44 at p.4). Woodham received the letter from Leonard and approved the involuntary demotion of Duncan. Woodham states in his affidavit that he relied on the recommendation of Leonard in approving the demotion of Duncan. (Doc. #41-37).

On September 27, 2013, Duncan submitted a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC"). Duncan signed an Amended EEOC Charge and returned it with a cover letter in October of 2013. In her cover letter Duncan complained that Brendle and Flowers acted adversely to her because of her internal complaint to ALDOT in May of 2013 and because of her participation in Jordan's internal complaint in May of 2013.

On March 27, 2014, pursuant to State Personnel Department rules, Duncan was removed from the promotional register for the Accounting Director I job classification because she had been on the register for two years. Duncan was also removed from the open/competitive register because she had been on that register for two years. (Doc. #41-1 at p.11).

On April 21, 2014, ALDOT appointed Jeffrey Hornsby, a white employee, to the Accounting Director I job classification, the position which Duncan had requested by reallocation. On October 10, 2014, ALDOT appointed another white employee, Tammy Dunn to the Accounting I Director job classification. Effective February 16, 2015, ALDOT hired Carissa Adams as an Accounting Manager. Duncan was not on the Certificate of Eligibles for any of these positions and therefore could not be considered for these positions under State Personnel Department policy. (Doc. #41-1 at p.7; ¶38).

## IV. DISCUSSION

The Defendants have moved for summary judgment on all claims on multiple grounds, which the court will address in turn. The Defendants preliminarily argue, however, that Duncan should be limited to the claims she has pled in this case; namely, a Title VII retaliation claim against the Alabama Department of Transportation and a race discrimination claim against the individual Defendants. (Doc. #1). In her opposition to the Motion for Summary Judgment,

Duncan does not address the argument that her claims are pled in this way. The court will, therefore, address the grounds for summary judgment as to the claims as pled. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (stating "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

A.      Count I--Retaliation Claims Against ALDOT and the State of Alabama

With respect to the retaliation claims, the Defendants first argue that there is no difference between the claim against ALDOT and the State, and so the State of Alabama should be dismissed. The court agrees, and the State of Alabama will be dismissed. The court, therefore, will only consider the retaliation claims pled against ALDOT.

In order to establish a prima facie case of retaliation, a plaintiff may show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) she established a causal link between the protected activity and the adverse action. *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009). These three elements create a presumption that the adverse action was the product of an intent to retaliate. *Id.* at 1308. Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Id.* After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions. *Id*. A plaintiff may be able to rely solely on the temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality, but the temporal proximity must be "very close." *Thomas v.*

*Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007). The Defendants challenge all of the elements of Duncan's prima facie case.

  a.  Protected Activity

To meet the first prima facie element of engaging in a protected activity, a plaintiff must establish that she either "has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause). 42 U.S.C. § 2000e–3(a).

In her brief, Duncan contends that she engaged in a protected activity when she complained on May 10, 2013 through ALDOT's internal EEO department. Duncan points to the statement within that complaint that she was subjected to a counseling session "held to make racial and insulting verbal comments." (Doc. #47-17 at p.3). Duncan argues that she told Brendle that she was going to complain to the ALDOT EEO. She also cites to her deposition in which she stated that the EEO investigator told her the EEO investigator had informed Brendle and Flowers about her complaint. (Doc. #41-4 at p.179: 9-17). Duncan finally points out that she was a witness for Tamiko Jordan's complaint and contends that this was protected activity under the participation clause.

The participation clause of Title VII "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal

charge with the EEOC." *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Therefore, participating in Tamiko Jordan's internal EEO complaint does not satisfy Duncan's prima facie case requirement. *See, e.g., Cheatham v. DeKalb Cty., Georgia*, No. 16-11068, 2017 WL 1046087, at *4 (11th Cir. Mar. 20, 2017).

The Defendants also take the position that Duncan's May 10, 2013 internal EEO complaint lacks specific reference to discrimination on the basis of race to constitute protected activity. The Defendants cite *Tucker v. Fla. Dep't of Transp*., No. 16-10420, 2017 WL 443632, at *1 (11th Cir. Feb. 2, 2017), in which the court affirmed a finding of a lack of a protected activity where an employee's memorandum "neither explicitly complained of sexual harassment nor did the conduct complained of therein give rise to an objective belief that any sexual harassment had occurred."   The Defendants state that the meeting which followed Duncan's internal complaint did not discuss racial conduct so there was no objective belief that discrimination had occurred.

The court concludes that there is sufficient evidence to establish a protected activity of opposition, based on her own complaint. Unlike in *Tucker* where comments were identified in a memorandum as "inappropriate," here Duncan identified comments as "racial" on a form entitled "Harassment and Discrimination Report Form" when she made a complaint using ALDOT's internal procedure. (Doc. #41-17).

    b.  Materially Adverse Employment Actions and Causation

The Supreme Court has held that an employment action qualifies as adverse for retaliation claims if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co., v. White*, 548 U.S. 53, 57 (2006).

The Defendants argue that Duncan's EEOC Charge only lists the following acts as retaliation: written counseling, low score on evaluation, referral to EAP, and a demotion. The Defendants argue that there is no reference to any failure to promote. Within the list of challenged actions, the Defendants contend, only the demotion is an adverse employment action.

Duncan refers to the following employment actions within the section of her brief addressing retaliation: a lower score on her performance evaluation, recommended EAP counseling, and a demotion, and promotions to the position to Accounting Director I. (Doc. #56 at p.14-6).

i.    May 2013 counseling

The Defendants state that the May 1, 2013 counseling action was not an adverse employment action because only Duncan's supervisors knew of it, it did not go in her personnel file, and it did not cause her performance appraisal score to change. Of course, this counseling could not be in retaliation for Duncan's internal complaint, because the internal complaint was made on May 10, 2013, about that counseling, *see e.g., Schechter v. Georgia State Univ*., 341 Fed. App'x. 560, 563 (11th Cir.2009), and Duncan does not appear to argue that it was in retaliation for that protected activity.   Therefore, to the extent that Duncan claimed this as a separate act of retaliation, summary judgment is due to be GRANTED.

ii.    2013 Performance Evaluation

As to the 2013 performance evaluation, the Defendants contend that this was not an adverse employment action because a performance appraisal which is two points lower than the appraisal the year before but still falls within "Exceeds Standards," and does not result in the loss of any money is not materially adverse. The Defendants cite to the Affidavit of the Chief of the ALDOT Personnel Bureau in which he states that merits system employees who receive ratings of both "Exceeds Standards" and "Consistently Exceeds Standards" may receive merit raises of two steps. (Doc. #41-1 at ¶10).

Duncan argues that her performance rating of a 33.60 was an adverse employment action, citing her deposition testimony that "[i]t they see a score that's not good, then they could consider that score in promoting or not promoting." (Doc. #41-4 at p.66:17-19).

The Eleventh Circuit, in an unpublished opinion which applied the *Burlington* standard, has explained that although an "adverse employment action" in the retaliation context is not as restrictive as it is in the discrimination context, an adverse employment action still must be considered "materially adverse," and a "negative performance evaluation would not, by itself, have deterred a reasonable person from making a charge of discrimination . . . where such an evaluation, by itself, would not impact his salary or job status." *Barnett v. Athens Regional Medical Center Inc.*, 550 Fed. App'x 711, 715 (11th Cir. 2013). In another unpublished opinion, the Eleventh Circuit explained that although an employee received four points less than a perfect score on her performance evaluation, she failed to establish that "the lower score on her evaluation, which her supervisor testified was 'excellent,' affected the terms or conditions of her

12

employment in any manner and would have dissuaded a reasonable person from filing a complaint." *Cox v. City of Tampa*, 418 F. App'x 845, 847 (11th Cir. 2011). Although these unpublished opinions are non-binding, they are a persuasive application of the standard for adverse employment actions.

Duncan's only evidence is her subjective opinion that her score is "not good," and her speculation that it "could" be considered in a promotional decision. The court concludes that Duncan has not provided a sufficient evidentiary basis from which a reasonable jury could conclude that her "Exceeds Standards" performance evaluation could dissuade a reasonable worker from making or supporting a charge of discrimination.

iii. EAP Referral

The Defendants' position with regard to the EAP counseling offer is that it was not an adverse employment action because it was not objectively the type of event that would deter a reasonable employee from engaging in protected conduct.

Duncan refers to her EAP counseling session in her brief, arguing that it was recommended that she attend, she attended, and she received nothing but positive feedback. She does not offer any evidence that she suffered any harm from the offer of EAP counseling that would have deterred a reasonable employee from making or supporting a charge of discrimination. The court concludes, therefore, that she has not presented sufficient evidence that this action was an adverse employment action. *See, e.g., Rainey v. Holder*, 412 Fed. App'x 235, 238 (11th Cir. 2011) (holding no adverse employment action for purposes of a retaliation claim

in a case including a voluntary referral of the matter to the agency's Employee Assistance Program).

      iii.     Promotions

Accounting Director I positions were filled in 2014 and 2015. The Defendants have moved for summary judgment on the basis that no claim for denial of a promotion is included in the Plaintiff's EEOC charge. The Defendants also have stated that the alleged denial of a promotion of Duncan to these Accounting Director I positions was not an adverse employment action, or that she was not qualified for the position, because she was not on the Certificate of Eligibles. The Defendants state that ALDOT did not remove her from the Accounting I register, but instead she was removed pursuant to the State Personnel Department "two year" rule. Further, the Affidavit of the Chief of ALDOT's Personnel Bureau states that "[i]n 2014, Duncan still satisfied the minimum qualifications for the Accounting Director I job classification" and "[n]othing about her demotion would have prevented her from applying for the Accounting Director I job classification or from being placed on a register." (Doc. #41-1 at p.11).

Even assuming that the claim is properly before the court, and even if the Defendants' argument is properly analyzed as an issue of pretext, rather than prima facie case, the court cannot conclude that Duncan has adequately created a question of fact as to the reason articulated for her non-selection; namely, that she was not on the Certificate of Eligibles. Duncan has not presented any evidence to call into question that she was not on the Certification of Eligibles. She also has not presented evidence contrary to the affirmative evidence that her

demotion was not related to her failure to be on the Certificate of Eligibles. Summary judgment is, therefore, due to be GRANTED as to this claim.

iv.     Demotion

The Defendants concede that Duncan's demotion was an adverse employment action. The Defendants argue, however, that Duncan cannot establish causation between the adverse employment decision to demote her made by final decision maker Woodham and any protected activity, because there is no evidence that Woodham had knowledge of Duncan's internal complaint when the decision regarding her demotion was made.

To establish a causal connection, a plaintiff must show that the person who took the adverse employment action was aware of the protected conduct at the time the decision was made to take the adverse employment action. *See Brungart v. Bellsouth Telecomms., Inc*., 231 F.3d 791, 799 (11th Cir. 2000).

Duncan argues that she told Brendle that she was going to complain to the ALDOT EEO. She also cites to her deposition in which she stated that the EEO investigator told her the EEO had informed Brendle and Flowers about her complaint. (Doc. #41-4 at p.179: 9-17). Duncan therefore says that Flowers and Brendle knew that she had filed a complaint against them and then ten days later Duncan began to experience adverse employment actions. Duncan's theory is that in response to her complaint, Brendle and Flowers began engaging in retaliatory actions, which led to her demotion. This argument, however, does not answer the Defendant's contention

that the final decision maker was unaware of Duncan's protected activity of complaining to the ALDOT EEO.

Duncan, however, does rely in a footnote on a "cat's paw" theory for attributing "discriminatory" animus. (Doc. #54-1 at p.20 n.9). It is not clear, but it may be that she also is arguing that Brendle and Flowers were aware of her protected activity and recommended her demotion in retaliation, which was then adopted by the final decision maker under a "cat's paw" theory. *See Russaw v. Barbour Cnty. Bd. of Educ.*, 891 F. Supp. 2d 1281, 1293 (M.D. Ala. 2012) (analyzing a retaliation claim under "cat's paw" analysis).

Under "cat's paw" analysis, even if the final decision maker holds no discriminatory animus, the discriminatory animus of a recommender can be imputed to the decision maker when the decision maker does not conduct his or her own independent investigation. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir.1999). When "the decisionmaker follow[s] the biased recommendation without independently investigating the complaint against the employee[,] ... the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson*, 186 F.3d at 1332. On the other hand, where the decision maker independently investigates the charges of misconduct against the employee and, based upon that investigation, finds that the employee is guilty of the misconduct, the "causal link" between the discriminatory animus and the adverse employment action (here, a demotion) is "broken" by the decision maker's independent decision. *Id.* at 1331. Stated slightly differently, where a racially-biased recommender is an "integral part of [a] multi-level [decisionmaking] process," that bias corrupts the entire process where the decision maker

merely rubber stamps the recommendation. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir.1999).

For claims in which "but for" causation must be demonstrated, which include ADEA and retaliation claims, an independent judgment by the final decision maker can break the causal connection if a "recommendation, even assuming arguendo it was tainted with some discriminatory animus, was not a 'determinative influence'" on the final decision. *Sims v. MVM, Inc*., 704 F.3d 1327, 1337 (11th Cir. 2013).

In this case, a recommendation was reviewed by a three-person committee, and an investigator, Wheeler, was assigned to investigate the recommendation. Wheeler interviewed witnesses and issued a report with her own recommendation. A hearing was held by Leonard during which several witnesses presented testimony and he approved of the recommendation by the investigator, Wheeler. Leonard, the Hearing Officer, states in an Affidavit that he based his "recommendation entirely on the evidence which suggested to [him] that the demotion was necessary and appropriate for reasons given in Maxine Wheeler's July 25, 2013 report, which was offered as ALDOT's first exhibit at the hearing, and not for any other reasons." (Doc. #41-44 at p.4). Woodham, final the decision maker, states in an Affidavit that he "relied on the recommendation of DeJarvis Leonard as the impartial Hearing Officer in the matter and approved the involuntary demotion of Janice Duncan." (Doc. #41-37 at p.6).

The undisputed evidence before the court, therefore, is that this is not a situation where a recommendation was rubber-stamped by the final decision maker, but instead that there was an inquiry conducted by a Hearing Officer which formed the basis of the final decision maker's

determination to demote Duncan. There is no evidence that the final decision maker relied on a recommendation by any biased recommender. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (holding that a cat's paw theory did not apply in part because there was a three-day hearing to investigate the charges). Instead, the independent persons involved, including the investigator Wheeler and the Hearing Officer Leonard, recommended demotion. *See Sims*, 704 F.3d at 1337 (reasoning that a biased recommendation was not a determinative influence in light of decision maker's five-month evaluation, independent judgment, and the unanimous opinion of all persons consulted). Summary judgment is, therefore, due to be GRANTED as to the demotion claim.

    B.    Race Discrimination Claims Against the Individual Defendants

        1.    Limitation of Claims

The Defendants point out that that claim asserted through §1983, for violation of §1981, is only asserted against Brendle and Flowers, not the State of Alabama or ALDOT.

The Defendants also argue that Duncan is limited to the discrimination theories stated in her Complaint which include a denial of promotion awarded to Tammy Dunn and Carissa Adams, imposition of discipline and holding Duncan to a higher standard than white supervisors, and demoting Duncan. The Defendants in their reply argue that although Duncan has referred to other actions in her brief, those claims were not pled in the Complaint.

The three identified acts of disparate treatment in Count II of the Complaint are denial of promotions given to Tammy Dunn and Carissa Adams, that Brendle and Flowers subjected Duncan to disparate treatment in the imposition of discipline in that she was held to higher standards than white supervisors, and disparate treatment when Brendle and Flowers demoted

her. (Doc. #1 at p.14-5).

　　2.　Claims

The Defendants moved for summary judgment under the traditional burden-shifting framework whereby a plaintiff seeks to prove intentional discrimination under § 1981 as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).　The Defendants contend, among other things, that Duncan cannot point to a comparator and, therefore, cannot establish a prima facie case of discrimination.

In response, Duncan cites to *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), in which the court reversed a grant of summary judgment where there was no adequately similarly-situated comparator. As explained by the Eleventh Circuit in a subsequent case, however, in *Smith* the employee offered compelling evidence of his employer's motive to treat white employees less favorably, including numerous incidents where the discipline of white employees varied considerably from that of black employees, and a "discipline 'matrix' " created by the employer tracked the discipline and race of employees. *See Connelly v. Metro. Atlanta Rapid Transit Auth.*, 764 F.3d 1358, 1364–65 (11th Cir. 2014) (citing *Smith*, 644 F.3d at 1329–46). The court explained further that " 'evidence of racial discrimination [which is] considerably weaker than the evidence presented in *Smith*,' is insufficient to create a reasonable inference of racial discrimination." *Id.*; *see also Wood v. Bailey-Harris Const. Co*., No. 2:11-CV-136-WHA, 2012 WL 3069949, at *5 (M.D. Ala. July 27, 2012) (stating "to the extent that *Smith* stands for an alternative means of defeating summary judgment in a Title VII case, it is easily distinguishable from the present case in light of the weight and volume of the evidence before the *Smith* court and dearth of evidence before this court.").

19

In her brief, Duncan has pointed to the following evidence under a *Smith* analysis: Duncan had been a supervisor with no issues or disciplinary write-ups until she asked for a reallocation, Brendle and Flowers treated her with open hostility after she asked for a reallocation, Brendle undermined Duncan's discipline efforts by letting subordinates go around Duncan, Brendle asked Duncan to rescind discipline she had given to a white employee but did not make the same request for an African-American employee accused of the same rules violation, all Accounting I Directors who report to Flowers are white, Flowers promoted Duncan in 2008 after the white employee who was selected quit the position, Flowers and Brendle turned a meeting requested by Duncan into a counseling session, Flowers and Brendle downgraded Duncan's evaluation in June of 2013 and ultimately demoted her, and white persons were selected for the Accounting I Director position in 2014. (Doc. #56 at p.19). Duncan contends that a reasonable jury could conclude that Brendle and Flowers treated Duncan in the manner in which they did to clear the way for white employees to be promoted.

The only incident identified by Duncan that even approaches the type of evidence pointed to by the *Smith* court is Duncan's statement that Brendle asked her to rescind discipline for a white employee but not for an African-American employee. Duncan also states in her brief, however, that Brendle allowed African-American and white employees to circumvent her authority. (Doc. #54-1 at p.7). The Defendants also cite Duncan's deposition testimony that Brendle made a request to rescind the white employee's discipline because of her race, but also because Brendle was friends with the employee. (Doc. #41-4 at p.100: 14-20). Duncan also testified that the only comment made by Brendle or Flowers of a racial nature was the word, "stupid," used by Brendle when she said that Duncan had made "stupid statements about getting

support." (Doc. #41-4 at p.95: 18-21).

For *Smith* to apply, there must be a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328. This court cannot conclude that Duncan has presented sufficient evidence to meet that standard here.

The court, therefore, turns to the Defendants' arguments under the traditional framework by which a plaintiff must establish a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. A plaintiff establishes a prima facie case of race discrimination under the Title VII framework, which also applies to §1981 claims, *see Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), by showing: (1) she belongs to a racial minority; (2) she was subjected to adverse job action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing*

*Prod., Inc.*, 530 U.S. 133, 147 (2000). That is, even if a plaintiff establishes a prima facie case and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment "will sometimes be available to an employer in such a case." *Chapman v. AI Transport*, 229 F.3d 1012, 125 n.11 (11th Cir. 2000).

As noted above, the actions upon which Duncan bases discrimination claims against Brendle and Thomas in her Complaint are as follows: Tammy Dunn's promotion to Accounting Director I in 2014, Carissa Adams' promotion in February 2015 to the Accounting Manager position Duncan formerly held, that Brendle and Flowers subjected Duncan to disparate treatment in the imposition of discipline in that she was held to higher standards than white supervisors, and disparate treatment when Brendle and Flowers demoted her. The court will begin with the claim based on imposition of discipline.

       i.        Imposition of Discipline

In her Complaint, Duncan's claim appears to be that after she asked for a reallocation, Brendle and Flowers became critical of her management style and she received her first written discipline since becoming an ALDOT employee.

In moving for summary judgment, the Defendants argue that the May 1, 2013 counseling is not an adverse employment action because the counseling did not constitute a materially adverse change in the terms or conditions of her employment. The Defendants further state that Duncan has not pointed to similarly-situated white employees who were not disciplined for similar conduct.

Duncan's discussion of this counseling appears to be limited to her contention that Flowers and Brendle turned a meeting in which Duncan was requesting support into an informal

counseling session. In *Barnett v. Athens Regional Medical Center Inc.*, 550 Fed. App'x 711, 715 (11th Cir. 2013), the court concluded that a reprimand was not an adverse employment action because there was no evidence that the employee suffered any harm that would have deterred a reasonable employee from making or supporting a charge of discrimination, noting specifically that there was no evidence that any future pay raise or job status was affected. This court concludes that the same reasoning is persuasive to Duncan's claim based on an informal counseling session. *See, e.g.*, *Turner v. Tamko Bldg. Prod., Inc.*, No. 7:11-CV-03741-TMP, 2013 WL 6636346, at *10 (N.D. Ala. Dec. 17, 2013) (stating that counseling sessions are not adverse employment actions). Summary judgment is due to be GRANTED as to this claim.

To the extent that Duncan has presented evidence of other actions, such as voluntary referral to EAP counseling and her 2013 evaluation, which might fall within her claim for disparate imposition of discipline, for the reasons discussed above, the court cannot conclude that she has adequately demonstrated that these actions by her employer were adverse employment actions, particularly under the "adverse employment action" standard which applies to discrimination claims. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (holding "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment.").

ii.    Promotion

The first aspect of the promotion claim asserted by Duncan in her brief appears to be a theory that Duncan was denied a reallocation at the time she requested it of Flowers in 2013.   As noted earlier, specific promotions were identified in her discrimination claim as pled in the

Complaint. A claim based on denial of a promotion in 2013 is not one of them. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (stating "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Because there are some claims for denial of promotion specifically pled, however, and Duncan does refer to the request for reallocation in the fact portion of her Complaint, in an abundance of caution, the court will consider this claim.

As to the 2013 promotion claim, the Defendants have invoked the defense of the statute of limitations. The Defendants argue that Duncan's claim based on a denial of a reallocation/promotion in April 2013 is barred by a two-year statute of limitations.

A claim against state actors for violations of § 1981 must be brought through § 1983. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir.2008). A two-year limitations period generally applies to § 1983 actions in Alabama. *Id.* But, "a four-year statute of limitations applies to 'civil action[s] arising under an Act of Congress enacted after' December 1, 1990." *Id.* (quoting 28 U.S.C. § 1658(a)). In other words, if a § 1981 claim was made possible through the enactment of the 1991 amendments to § 1981, then those claims are governed by the four-year statute of limitations. *Id.*

Pre-amendment, an employee could only pursue a § 1981 claim based on a failure to promote if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson v. McLean Credit Union*, 491 U.S. 164, 185, (1989) (emphasis added). If the promotion would create "a new and distinct relation between the employee and the employer," then the claim was actionable under pre-amendment § 1981. *Id.; see also Barclay v. First Nat'l Bank of Talladega*, No. 1:14-CV-01573-KOB, 2016 WL 1270519,

at *6 (N.D. Ala. Mar. 31, 2016).   In determining whether a particular promotion rises to the level of a new and distinct relation between employer and employee, courts have compared the nature of the employee's current duties, compensation, and benefits and duties, compensation, benefits in the different position in question. *See Harrison v. Assocs. Corp. of N. Am.*, 917 F.2d 195, 198 (5th Cir. 1990), *cited with approval in Wall v. Trust Co. of Ga.*, 946 F.2d 805, 808-09 (11th Cir. 1991) (holding that promotion was not a new and distinct relationship where same benefits and policies and procedures applied).

Duncan responds that her claim was not a claim for a promotion, but a claim for denial of a reallocation and, therefore, she was not seeking a distinct relationship with her employer and her claim should be governed by the four-year statute of limitations. Duncan does not cite to case law to support this proposition.

Whether the change in position is called a promotion or a reallocation does not appear to be dispositive under the cases analyzing the statute of limitations. As Duncan describes it, the reallocation she sought would have been a promotion and so fell outside of the competitive merit system. It required a desk audit to determine whether she had been performing tasks associated with a different or higher job classification than the position she held. Duncan asserts that she was on the register for Accounting Director I and was performing the duties and sought to be classified as Accounting Director I.

The Defendants have presented evidence that the new position sought by Duncan would have resulted in a difference in earning potential, duties, responsibilities, and required qualifications. The Chief of the Personnel Bureau states in an affidavit that each job classification within the Merit System has specifications that define the position and each is

assigned to a salary pay grade range. (Doc. #41-1 at p.5). A reallocation results in an employee moving to a pay grade range that has a higher salary available. (Doc. #41-1 at p.9).

The court concludes that Duncan was seeking a new and distinct relationship with her employer because she was seeking to be reclassified into a position with different responsibilities and pay grade from the position she occupied. The claim based on the original failure to reallocate/promote Duncan, therefore, is barred by the statute of limitations. *See Adams v. Office of Atty. Gen.*, Ala., No. 2:11-CV-621-WKW, 2013 WL 2155384, at *4 (M.D. Ala. May 17, 2013) (finding promotion was a new and distinct employment relationship even though employee would not have gotten a raise considering the added authority and responsibility that comes with the title).

Even assuming, however, that the claim is governed by the four-year statute of limitations, Duncan has not established a prima facie case because she has not presented evidence that a person outside of her protected group was given a reallocation at that time. Further, the Defendants have articulated as the legitimate, non-discriminatory reason for not reallocating/promoting Duncan in April 2013 that Flowers told Duncan he would consider this request during the reorganization of the Bureau. Flowers explains in an affidavit that he was in the process of reviewing the Finance and Audits Bureau organizational structure at the time of Duncan's request. (Doc. #41-7). Duncan has not presented evidence sufficient to call into question the reason for the failure to reallocate the position at that time. To the extent that a position was later filled by a white employee, it is the factual basis for her claims based on the failure to promote Duncan at that later point to which the court now turns.

The Defendants contend that Duncan cannot show that she was qualified for promotions

in 2014 or 2015, because under the State Personnel Department rules, an employee is only eligible for promotion if she appears on the Certification of Eligibles: Duncan was not on the Certification of Eligibles from which the selections were made for Accounting Director I in 2014 or Accounting Manager in 2015. (Doc. #41-1 at p. 13, ¶31, and ¶38). Under State Personnel Department Rules, an employee who has been on a continuous register for two years without being appointed must be removed. (Doc. #41-1 at ¶27). Duncan was removed from the promotional register for the Account I Director job classification and the competitive register for the Account I Director I job classification because she had been on those continuous registers for two years. (Doc. #31-1 at ¶¶28, 29). An employee can reapply to be placed back on the register, but Duncan did not submit a new application for the Account I Director job classification. (Doc. #41-1 at ¶30). Duncan also did not submit an application for the Accounting Manager job. (Doc. #41-1 at ¶31).

Whether analyzed as qualification for purposes of a prima facie case or as a legitimate non-discriminatory reason, Duncan has not presented any evidence to call into question that she was not on the Certification of Eligibles for Accounting Director I or Accounting Manager position, or the statements in the Affidavit of the Chief of ALDOT's Personnel Bureau that "[i]n 2014, Duncan still satisfied the minimum qualifications for the Accounting Director I job classification" and "[n]othing about her demotion would have prevented her from applying for the Accounting Director I job classification or from being placed on a register." (Doc. #41-1 at p.11). Summary judgment is due to be GRANTED as to the failure to promote claims.

iii.     Demotion

Duncan's theory, as discussed above, is that Brendle and Flowers determined, for race-

based reasons, not to promote Duncan, and therefore took actions, which later became the basis for her demotion. Duncan relies on *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999) and *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011), for a "cat's paw" theory in this case. As noted earlier, under a "cat's paw" theory, a biased recommender uses the final decision maker as a conduit to give effect to discriminatory animus.

The "cat's paw" analysis that applies to claims for which a plaintiff must prove that discrimination was a "a motivating factor," including Title VII and §1981 race discrimination claims, has been refined by the Supreme Court in *Staub*, 562 U.S. 420-421. Under that analysis, an independent investigation by an employer does not necessarily immunize the employer from liability because "the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.*

Applying *Staub*, the Eleventh Circuit, in an unpublished opinion, held that "cat's paw" liability was not appropriate in a case in which an "independent investigation determined dismissal was, apart from [the] recommendation, entirely justified." *Sirpal v. Univ. of Miami*, 509 Fed. App'x. 924 (11th Cir.2013). A district court applying *Staub* has reasoned that a supervisor's bias can be imputed to the decisionmaker, even if there is an independent investigation, if the decision maker "relies on facts provided by the biased supervisor," by "'effectively delegat[ing] the factfinding portion of the investigation to the biased supervisor.'" *Watkins v. EFP, LLC*, No. 5:12-CV-02747-JHE, 2014 WL 7337392, at *18 (N.D. Ala. Dec. 23, 2014) (quoting *Staub*, 131 S.Ct. at 1193).

In this case, the evidence before the court is that Wheeler conducted an investigation by

interviewing witnesses and made a report. Then, Leonard conducted a hearing in which he took testimony and considered evidence. Leonard stated that the evidence at the hearing warranted demotion "for the reasons given in Maxine Wheeler's July 25, 2013 report, which was offered as ALDOT's first exhibit at the hearing, and not for any other reasons." (Doc. #41-44 at p.4). The final decisionmaker, Woodham stated that he relied on Leonard's recommendation and approved the involuntary demotion of Duncan. (Doc. #41-37 at p.6).

Even assuming that the very weak evidence of racial bias on Brendle and Flowers' part in this case could support a "cat's paw" theory, there is no evidence before the court that the final decision to demote Duncan was made based on facts provided by a biased recommender. To the contrary, there were two separate inquiries made, one by Investigator Wheeler, and one by Hearing Officer Leonard, which provided the facts upon which the final decision was made. Accordingly, the court concludes that Duncan has failed to present sufficient evidence that any discriminatory motive by Brendle or Flowers was a motivating factor in Woodham's decision to demote her, and summary judgment, therefore, is due to be GRANTED in favor of Brendle and Thomas as to her demotion claim.

## V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment is due to be and is hereby ORDERED GRANTED. Final judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 27th day of April 2017.

/s/ W. Harold Albritton
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE